UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITE HERE LOCAL 23, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 15-cv-1165 (KBJ) |
| ) | |
| I.L. CREATIONS OF MARYLAND INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Defendant I.L. Creations of Maryland Inc. ("IL Creations") is a food-service company that entered into a collective bargaining agreement ("CBA") with a labor union, Plaintiff Unite Here Local 23 ("Unite Here"), pertaining to the employment of some of IL Creations's employees. In the fall of 2013, Unite Here filed a grievance pursuant to procedures outlined in the CBA, asserting that IL Creations was tasking non-union workers at its United States Department of Agriculture ("USDA") location with work that is reserved for union members under the CBA. Thereafter, IL Creations and Unite Here engaged in arbitration as prescribed in the CBA, and the arbitrator ultimately and generally resolved the dispute in Unite Here's favor. When IL Creations responded by expressly refusing to comply with the arbitrator's ruling absent a court order, the instant action followed; Unite Here seeks to enforce the arbitrator's judgment pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. (Compl., ECF No. 1, ¶¶ 1–5.)

Before this Court at present is Unite Here's motion to confirm the arbitration

award and also its request for an award of attorneys' fees. (Pl.'s Mot. to Confirm Arbitration Award & for an Award of Attorneys' Fees ("Pl.'s Mot."), ECF No. 7; Pl.'s Mem. in Support of Pl.'s Mot ("Pl.'s Mem."), ECF No. 7-1.) IL Creations opposes the motion (Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), ECF No. 15), and has also filed a separate counterclaim (Def.'s Answers, Aff. Defenses & Countercl. ("Def.'s Countercl."), ECF No. 10), asserting that the arbitrator's award should be vacated on the grounds that the arbitrator lacked jurisdiction to resolve the dispute and that, in any event, the arbitrator's decision is substantively flawed because it deviates impermissibly from the terms of the CBA. Because this Court finds that arbitration awards are entitled to extreme deference; that IL Creations has forfeited any challenge to this arbitrator's jurisdiction to rule; and that IL Creations's attack on the arbitrator's decision comes nowhere near to overcoming the high barrier to judicial overrides of arbitrator decisions, Unite Here's motion to enforce the arbitration award will be **GRANTED** and IL Creations's counterclaim will be **DISMISSED**. In addition, as explained below, this Court concludes that Unite Here is entitled to recoup reasonable attorneys' fees that this case forced it to incur. A separate order consistent with this Memorandum Opinion will follow.

I.     BACKGROUND

The CBA at issue in the instant case establishes that Unite Here members must be the individuals who perform certain positions and duties at various IL Creations facilities. (*See* Collective Bargaining Agreement ("CBA"), Ex. A to Pl.'s Mot., ECF No. 7-4, at 5, 8.)[1] Specifically, and as relevant here, the agreement states that "[IL

---

[1] Page-number citations to the documents the parties have filed refer to the page numbers that the

Creations] shall recognize [Unite Here] as the representative of all [IL Creations] employees . . . in the classifications listed in Exhibit B, or in classifications called by different names when performing similar duties" in various IL Creations facilities, including those in the District of Columbia. (*Id.* at 5.) Exhibit B to the CBA lists sixteen different "job classifications" within the bargaining unit of represented employees, including Head Cook, Cook, Grill Cook, and Junior Cook. (*Id.* at 32.) Unite Here and IL Creations also signed a Memorandum of Agreement that supplements the CBA—titled Appendix 7—that applies only to bargaining-unit employees at IL Creations's USDA location and lists similar job-classification breakdowns as those listed in Exhibit B. (*See id.* at 44 (listing, *inter alia*, "First Cook" and "Cook" positions).)

The CBA also establishes processes for grievances and arbitration. For example, the agreement lays out a two-step process for grieving "any dispute arising out of the expressed terms or conditions contained within th[e] [CBA]" and makes clear that this process must be followed at the outset. (*Id.* at 21–22.) First, any grievance must be "submitted in writing to the General Manager within [ten] calendar days of its occurrence or of the date when the employee or the Union first became aware of the circumstances giving rise to the alleged grievance." (*Id.* at 22.) Next, if step one is insufficient to resolve the matter, the grievance has to be "submitted in writing to the District Manager . . . within [seven] calendar days after receipt of the [General Manager's response]." (*Id.*) The CBA also directs that, if need be, the matter may subsequently be "referred by [Unite Here] for final decision and determination to an

---

Court's electronic filing system automatically assigns.

3

impartial arbitrator[,]" whose decision would "be final and binding on [IL Creations], [Unite Here], and [any employees] involved." (*Id.*) Finally, these provisions direct that the arbitrator does not have "the ability or power to in any way modify, change, restrict, or extend any of the terms of [the CBA,]" and that "[f]ailure to file a grievance or to proceed to the next step within the prescribed time limits shall constitute a waiver of all rights to grieve and arbitrate such matters." (*Id.* at 22–23.)

The dispute that prompted the instant litigation began in November of 2013. (*See* Compl. ¶ 11; Arbitrator's Op. & Award, Ex. B to Pl.'s Mot. ("Award"), ECF No. 7-5, at 3.) It is undisputed that, at its USDA location, IL Creations assigned certain positions "to individuals . . . who were not members of the bargaining unit" (Def.'s Opp'n at 6; *see also* Pl.'s Mem. at 5), and that these positions all required performing some type of chef work (*see* Def.'s Opp'n at 6 (listing the individuals' position titles as "Asian Chef," "Chinese Sous Chef," "Salad Chef," "Salad Sous Chef," and "Sous Chef for the American Department")). According to Unite Here, this meant non-bargaining-unit employees were "perform[ing] work reserved for Union-Represented employees"— *i.e.*, work similar to the duties of the positions listed in Exhibit B and Appendix 7 of the collective bargaining agreement—in violation of the agreement. (Compl. ¶ 11; *see also* Award at 3.) Unite Here initiated a grievance process that was unsuccessful (*see* Award at 3), and the parties proceeded to arbitration (*see* Compl. ¶ 12).

During the evidentiary hearing that the arbitrator held in July of 2014, both parties presented evidence and arguments in support of their positions. Unite Here reiterated its contention, supported by evidence, that IL Creations had violated the CBA by permitting non-bargaining-unit employees to perform certain jobs. (*See* Award at 4–

6.) IL Creations contended, *inter alia*, that the individuals in the challenged positions were not, in fact, performing bargaining-unit work; that the present organizational structure was essential to proper performance of IL Creations's food-service duties; and that, in any event, the current setup was not adversely affecting any union workers. (*See* Def.'s Opp'n at 6; IL Creations's Post-Hearing Brief, Ex. D to Pl.'s Reply, ECF No. 16-2, at 3.) Moreover, and significantly for present purposes, nothing in the post-hearing brief that IL Creations submitted or in the record before this Court indicates that IL Creations challenged the arbitrator's power to render a decision on this dispute.

On July 10, 2015, the arbitrator rendered a decision that largely favored Unite Here. The arbitrator began by laying out the relevant provisions and position restrictions contained in the CBA (*see* Award at 3, 8), and then evaluated each of the disputed positions in comparison to Exhibit B and Article 7's job classifications and the qualities of the individuals actually working in the disputed positions (*id.* at 9–12). Ultimately, the arbitrator found that IL Creations had violated the CBA with respect to four of the five disputed positions; that is, that the job descriptions of those positions demanded bargaining-unit work and should have been performed by bargaining-unit workers. (*See id.* at 11–13; *see also id.* at 11 (noting that the qualities required to perform the positions "approximate[d] the requirements demanded of Head Cooks [and] Cooks").) With respect to the fifth position, which was referred to as the "Asian Chef" position, the arbitrator did not entirely accept IL Creations's contention that the job demanded skills "so unique and extraordinary" that it could be performed by non-bargaining-unit individuals consistent with the CBA, but concluded that the particular individual who held the position at the time of the dispute likely possessed a unique set

of skills that IL Creations could not afford to lose, and thus determined that that individual should be "grandfather[ed]" into—*i.e.*, permitted to stay in—the position until the CBA's termination date in January of 2016. (*Id.* at 12.) Furthermore, to remedy the CBA violations, the arbitrator ordered that the four other positions be reclassified as "Head Cook" positions; posted as open within fifteen days; and filled within fifteen more days in accordance with the procedures set forth in the CBA. (*Id.* at 13–14.)

Less than one week later, IL Creations informed Unite Here in writing that it did not intend to comply with the arbitrator's decision and award. (Email from Matthew Yoo to Emilio Abate on July 16, 2015 ("Yoo Email"), Ex. C to Pl.'s Br., ECF No. 7-6, at 2 (stating that IL Creations "do[es] not have to follow the decision until a court order affirming the decision"). Consequently, Unite Here filed the instant lawsuit, invoking a section of the LMRA that grants federal district courts statutory jurisdiction to enforce labor-arbitration awards. (*See* Compl. ¶¶ 4–5); *see also United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. & Can., AFL-CIO*, 721 F.3d 678, 686–87 (D.C. Cir. 2013) (citing 29 U.S.C. § 185(a), (c)). Shortly after filing the complaint, Unite Here submitted a motion to confirm the arbitration award. (*See* Pl.'s Mot.) That motion is ripe for the Court's review, as is the counterclaim that IL Creations has filed, which requests that this Court vacate the award. (*See* Def.'s Countercl.; *see also* Pl.'s Answer to Def.'s Countercl., ECF No. 14.)

## II.   LEGAL STANDARDS

The "paramount goal" of the LMRA is "the promotion of labor peace through the collective efforts of labor and management." *Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 447 (D.C. Cir. 2004) (internal quotation marks and citation omitted). To this end, few principles are as well established as the general federal policy preference for "the peaceful resolution of labor disputes through arbitration"—a process that, when properly used, helps "resolve industrial strife quickly and inexpensively." *Office and Prof'l Emps. Int'l Union, Local 2 v. Wash. Metro. Area Transit Auth.*, 724 F.2d 133, 137 (D.C. Cir. 1983) (citation omitted). LMRA case law uniformly recognizes that judicial second-guessing undercuts the goal of resolving disputes through arbitration. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." (internal quotation marks and citation omitted)); *see also Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (same). Moreover, given that arbitration is an optional *alternative* to judicial resolution of disputes—a matter of contract that the parties negotiate over and jointly accept in the context of reaching a CBA, *see AT & T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 648 (1986) (citation omitted)—when the parties have agreed to arbitration, the law discourages the loser from seeking a second *de novo* (or even quasi-*de novo*) shot at obtaining its desired result in federal court. *See Misco*, 484 U.S. at 37 (observing that "it [i]s [the arbitrator's] judgment and all that it connotes that was bargained for" and not a court ruling (citation omitted)).

Consequently, when a court considers a motion to enforce an arbitration award under the LMRA, judicial review is "very limited." *Major League Baseball Players*

*Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *see also Nat'l Postal Mail Handlers v. Am. Postal Workers Union*, 589 F.3d 437, 441 (D.C. Cir. 2009) (noting the "extraordinarily deferential" applicable standard). Indeed, under the circumstances such as those at present, the arbitrator's award "*must* be enforced if the arbitrator act[ed] within the confines of his jurisdiction and his award dr[ew] its essence from the parties' collective bargaining agreement . . . even when a reviewing court disagrees with the arbitrator's judgment on the merits." *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 78 (D.C. Cir. 1987) (emphasis added)). That is a low bar: the party seeking award enforcement need only show that the arbitrator "premise[d] his award on his construction of the contract." *Nat'l Postal Mail Handlers*, 589 F.3d at 441 (alteration in original) (citation omitted).

Parsing out the narrow set of circumstances in which a federal court may reject a labor-arbitration award illustrates how much deference is required. One potential basis for challenging the enforcement of an arbitration award is that the arbitrator lacked "jurisdiction" over the particular dispute decided. *Nw. Airlines*, 808 F.2d at 78. This issue has been called the question of "arbitrability[,]" *Madison Hotel v. Hotel and Rest. Emps., Local 25, AFL-CIO*, 144 F.3d 855, 857 n.1 (D.C. Cir. 1998) (en banc), and the basic inquiry is whether or not the parties consented to have the arbitrator decide that dispute. Notably, an arbitrability challenge can be waived, and thus, a party forfeits the right to attack an arbitrator's jurisdiction to hear the dispute by not raising that issue before the arbitrator. *See Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008) ("Absent excusable ignorance of a predicate fact, a party that does not object to the arbitrator's jurisdiction during the arbitration may not later

do so in court."); *United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 168 (3d Cir. 1993) ("[B]ecause arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object . . . ."). Put another way, as far as arbitration is concerned, willing participation is consent to the arbitrator's power to resolve the dispute.

Where arbitrability is not an issue and there are no allegations of fraud or dishonesty on the part of the arbitrator, a court may reject an arbitration award *"only* if the arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice." *Nat'l Postal Mail Handlers*, 589 F.3d at 441 (alteration in original; emphasis added; internal quotation marks omitted) (quoting *Garvey*, 532 U.S. at 509). Even in these cases, courts do not scrutinize an arbitrator's decision "on the merits[,]" *Garvey*, 532 U.S. at 509 (citation omitted), which means that assertions that the challenged decision "rests on factual errors or misinterprets the parties' agreement" are beyond the scope of judicial review. *Id.*; *see also Nat'l Postal Mail Handlers*, 589 F.3d at 441 (explaining that the only pertinent question is "whether the arbitrator was 'even arguably construing or applying the contract'" (quoting *Garvey*, 532 U.S. at 509)); *Wash. Hosp. Ctr. v. Serv. Emps. Int'l Union Local 722, AFL-CIO*, 746 F.2d 1503, 1514 (D.C. Cir. 1984) (identifying a case in which the "arbitrator's words manifest an infidelity to [his] obligation" to base his award on the essence of the CBA as one rare situation in which a court could refuse enforcement of an arbitration award) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Occasionally, a party displeased with the arbitrator's remedy, in contrast to his reasoning, casts its objection as a claim that the breadth of the remedy selected evinces an impermissible infidelity to the contract. *See, e.g., Madison Hotel*, 144 F.3d at 857 & n.1 (noting this type of argument). However, such arguments must contend with the wide berth given to the arbitrator's power to remedy CBA violations; indeed, it is well established that "where [the parties] contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco*, 484 U.S. at 38. And although the parties can conceivably limit this background principle of broad discretion, *see id.* at 41, questions of whether the contract actually does so are necessarily "question[s] of contract interpretation that the parties have delegated to the arbitrator" and consequently receive the same extremely deferential review applicable to an arbitrator's interpretation of a CBA. *Madison Hotel*, 144 F.3d at 857 (internal quotation marks and citation omitted); *id.* at 859 (observing that the remedy in that case "f[ell] well within the bounds of this deferential standard"); *see also Granite Rock v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (noting that where the parties have "agreed to arbitrate *some* matters pursuant to an arbitration clause" any "doubts concerning the scope of arbitral issues should be resolved in favor of arbitration") (emphasis in original) (internal quotation marks and citation omitted).

### III. ANALYSIS

Unite Here has received an arbitration award in its favor; yet, IL Creations has refused to comply with the arbitrator's decision absent a court order. Moreover, IL Creations has asked this Court to countenance its audacity by vacating the award on the

grounds that the arbitrator had no jurisdiction to rule on the disputed issues in this case, and that the arbitrator "ignored the terms of the CBA[,]" thereby issuing an impermissible remedy. (Def.'s Countercl. at 8.) As explained below, IL Creations has waived its jurisdictional challenge, and its contention that the arbitrator's remedy transcends the bounds of the CBA is entirely unpersuasive. Additionally, and even more fundamentally, under the well-established legal standards that are applicable in this case, once a party elects to submit disputes to arbitration for final determination in lieu of proceeding in court, it also necessarily agrees to abide by the arbitrator's decision—meaning that courts must generally refrain from interfering with the outcome and the losing party to a consented-to arbitration proceeding cannot just refuse to perform as the arbitrator directs. This is especially so where, as here, the losing party willingly participated in an arbitration process that the parties' agreement clearly contemplated and the arbitrator's jurisdiction to rule was not previously questioned. Thus, this Court easily concludes both that the arbitration award must be enforced, and that Unite Here is entitled to recover the reasonable attorneys' fees that it incurred in litigating this matter.

> A.  **This Court Must Defer To The Decision That The Arbitrator Made In This Case, Which Is Based On An Interpretation And Application Of The Parties' CBA After An Arbitration Proceeding In Which The Defendant Fully Participated**

As explained above, arbitration is an optional alternative to the resolution of a labor-related dispute in court, and if the parties elect to submit potential disputes to arbitration for final decision, they generally must abide by the result. That is, in essence, what Unite Here maintains in bringing this enforcement action and filing the motion to confirm, and this principle undermines IL Creations's "understanding" that it

"do[es] not have to follow the [arbitrator's] decision until a court order affirming the decision." (Yoo Email at 2.)

As applied here, the parties' CBA provides that any "dispute[s] arising out of the expressed terms or conditions" of the CBA that are unresolved through the two-step grievance process may be referred "for final decision and determination to an impartial arbitrator[,]" and records the parties' agreement that any decision rendered in these circumstances would be "final and binding" on all parties involved. (CBA at 21–22.) The bargaining-unit-work dispute indisputably arises from the terms of the CBA, and notwithstanding IL Creations's protestations, there is also no question that the arbitrator "constru[ed] or appl[ied]" the CBA in reaching his decision, *Nat'l Postal Mail Handlers*, 589 F.3d at 441 (citation omitted), because his investigation of the bargaining-unit question repeatedly cites the relevant CBA provisions and applies them to the facts. (*See, e.g.*, Award at 13 (observing that IL Creations violated the CBA's ban on non-union employees performing union work and citing CBA provisions); *id.* at 8 (noting that the relevant question hinged on whether the disputed positions required qualifications and duties impermissibly similar to the positions listed in Appendix 7 and Exhibit B of the CBA). Thus, IL Creations's contention that it need not adhere to the arbitration decision is specious on its face, and delving further, as explained below, this Court also finds that there is absolutely no basis for the arbitrability and substantive objections that IL Creations raises.

First, with respect to arbitrability, IL Creations claims that it need not adhere to the arbitrator's decision due to the arbitrator's lack of jurisdiction under the CBA to rule on this dispute, because Unite Here waived its right to arbitrate. (*See* Def.'s Opp'n

12

at 9–14 (basing this argument—somewhat contradictorily—on the assertions that Unite Here failed to submit a written grievance in accordance with the CBA's grievance procedure, and that the grievance it submitted was untimely).) But IL Creations said *nothing* about this alleged procedural defect during the arbitration process, which is fatal to its current lack-of-jurisdiction contention. *See Howard Univ.*, 512 F.3d at 720 (explaining that because "arbitration is a matter of consent[,]" one who "submits to arbitration without objecting to the arbitrator's jurisdiction . . . may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent"); *id.* (emphasizing that "a party that does not object to the arbitrator's jurisdiction during the arbitration *may not* later do so in court" (emphasis added)); *see also United Indus. Workers*, 987 F.2d at 169 (observing that allowing a party that consented to arbitration by its actions to "vacate the award on the grounds that it never agreed to arbitrate the dispute would give [it] two bites at the apple . . . to obtain a favorable outcome"). To put it bluntly, IL Creations clearly "slept through its opportunity to object to the arbitrator's jurisdiction and may not avoid the consequence now that it has awakened." *Howard Univ.*, 512 F.3d at 721.

IL Creations fares no better with respect to its arguments regarding the reach of the arbitrator's remedy, and in particular, its assertion that the award should be vacated because the selected remedy "disregards the terms of the CBA." (Def.'s Opp'n at 16.) IL Creations first rails against the arbitrator's requirement that it post four of the disputed positions as available and fill them in accordance with the CBA's requirements, asserting that the arbitration award "includes a remedy that goes well

beyond the confines of the alleged grievance." (*Id.* at 14.) This contention is patently flawed, first, because it is based on the assumption that an arbitrator's remedy must be limited to the confines of the initial grievance, an assumption that is not based in the CBA and appears to have been plucked from thin air.[2] IL Creations also ignores the fact that, if a CBA contemplates that an arbitrator will craft remedies for CBA violations, courts are not free to disagree with an arbitrator's "honest judgment" regarding the proper remedy absent an agreed-upon limitation on that judgment. *Misco*, 484 U.S. at 38, 41. As noted, this means the breadth of the arbitrator's remedial authority is itself a "question of contract interpretation that the parties have delegated to the arbitrator[,]" and the arbitrator's answer to that question receives the extraordinarily deferential review applicable to such determinations. *Madison Hotel*, 144 F.3d at 857 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 765 (1983)).

Understanding that much resolves the point. As already noted, the arbitrator in the instant case made explicit and repeated references to the CBA both in framing the dispute and in explaining what IL Creations had to do to comply with the agreement (*see, e.g.*, Award at 3, 11–14), and in so doing, sufficiently demonstrated that he was construing and applying that contract in crafting the remedy. And no contractual limitations upon that remedial authority are apparent—in particular, nothing in the CBA

---

[2] IL Creations points to a paragraph in the CBA that addresses the requirements of a properly filed grievance and provides that a grievance must contain "the remedy that is being sought[.]" (Def.'s Opp'n at 14 (referencing CBA at 22).) But that requirement is not at all the same as mandating that the arbitrator's remedy be identical to the relief described in the grievance; indeed, it is "commonplace in arbitration proceedings" that "the scope of the issues develop[s] informally during the course of the parties' presentations." *Madison Hotel*, 144 F.3d at 857. Moreover, under the applicable deferential standard, more is necessary to show the arbitrator contravened an agreed-upon limitation on his remedial powers.

supports IL Creations's belief that the remedy an arbitrator issues cannot deviate from the scope of the initial grievance. Consequently, this Court has "no authority to disagree" with the arbitrator's honest judgment regarding this remedy's propriety. *Misco*, 484 U.S. at 38; *see also id.* at 41 (observing that the wide berth given to the arbitrator's "informed judgment" as to the "fair solution of a problem" is especially pertinent "when it comes to formulating remedies" (citation and emphasis omitted)).

IL Creations's alternative attack on the remedy is similarly unsuccessful. As far as the Court can tell, IL Creations seems to think that the arbitrator believed Article 16 of the agreement, which deals with promotions and job openings, gave him his power to order the remedy, although Article 16 does not expressly authorize the remedy the arbitrator ordered. (*See* Def.'s Opp'n at 16–17.) But the arbitrator did not purport to find remedial authority in Article 16; rather, the decision as a whole makes clear that the arbitrator was simply reminding IL Creations of the fact that, when it posted the new positions as ordered, it would have to abide by the terms of the agreement that relate to the posting of new job vacancies, which appear in Article 16. (*See, e.g.*, Award at 12 ("[IL Creations] must post the positions within [fifteen] days of receipt of this [Award] and fill the positions in accord with Article 16 of the CBA.").) And, again, it is key that IL Creations identifies no CBA provision that restricts the arbitrator's otherwise broad remedial powers such that ordering the positions to be reclassified and filled as the arbitrator did constituted a violation of the agreement. Thus, while this Court would be required to overlook even a serious error under the applicable deferential standard, *see Nat'l Postal Mail Handlers*, 589 F.3d at 441, here, there is simply no error to overlook.

In sum, IL Creations has forfeited any objection to the arbitrator's jurisdiction and the arbitrator in this case "neither rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract, nor made a finding completely inexplicable and border[ing] on the irrational." *OPCMIA, AFL-CIO v. Pullman Shared Sys. Tech., Inc.*, 908 F. Supp. 2d 251, 257 (D.D.C. 2012) (internal quotation marks and citations omitted; alteration in original). Thus, this Court will enforce this arbitration award.

### B.   Unite Here Is Entitled To Attorneys' Fees, And The Parties Are Directed To Meet And Confer Regarding Reasonable Fees

Unite Here has requested that this Court award attorneys' fees. To be sure, the LMRA does not explicitly authorize an award of fees in these cases, *see Wash. Hosp. Ctr.*, 746 F.2d at 1509, and Unite Here does not rely on any potentially applicable statutory provision in seeking fees. *See, e.g.*, 28 U.S.C. § 1927 (proscribing the unreasonable and vexatious multiplication of proceedings). Nevertheless, as Unite Here points out, "courts possess an inherent power to award attorneys' fees, unless explicitly forbidden by Congress, when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]" *Wash. Metro. Area Transit Auth. v. Local 2, Office and Prof'l Emps. Int'l Union, AFL-CIO*, 965 F. Supp. 2d 13, 56 (D.D.C. 2013) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)) (internal quotation marks omitted). Furthermore, courts may exercise this power if the "losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Id.* (quoting *Wash. Hosp. Ctr.*, 746 F.2d at 1510). And "an unjustified refusal to abide by an arbitrator's award" can, on its own, justify an award of attorneys' fees. *Int'l Union of Petroleum and Indus. Workers v. W.*

*Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).

This case clearly calls for the Court's exercise of that inherent power. Upon examination of the record and the parties' arguments, the Court finds that IL Creations had no basis for refusing to "to follow the decision until a court order affirming the decision." (Yoo Email at 2.) Moreover, if widespread, that attitude would completely undermine the purposes of arbitration, as it did here, by forcing the winning party to spend time, effort, and money seeking judicial enforcement of the arbitrator's award. When a party has no good reason to refuse to comply with an arbitrator's award, it cannot be permitted to "spin[] out the arbitral process unconscionably through the filing of meritless suits and appeals." *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists and Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 255 (7th Cir. 1986). And even a cursory examination of the governing law should have dissuaded IL Creations from resisting compliance with the arbitrator's decision, from challenging the arbitrator's jurisdiction (for the first time) in the context of a counterclaim filed in this Court, and from attacking the award's scope without any basis for doing so in light of the extremely deferential applicable standard. Thus, whether or not IL Creations's conduct ultimately amounts to subjective bad faith, it is clearly sufficient to entitle Unite Here to reasonable attorneys' fees.

## IV.   CONCLUSION

For the reasons stated in this opinion, Unite Here's motion to confirm and enforce the arbitration award will be **GRANTED**, and IL Creations's counterclaim will be **DISMISSED**. Additionally, as set forth in the accompanying order, judgment will be entered in Unite Here's favor with respect to its complaint, and Unite Here is

entitled to reasonable attorneys' fees incurred in this matter, which the parties will address pursuant to Local Rule 54.2(a).

DATE: December 11, 2015                    *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge